UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

FRANCIS MICHAEL NUTTING,

        Petitioner,

        Case No. 2:20-cv-207

v.

        Honorable Janet T. Neff

CONNIE HORTON,

        Respondent.
_____/

## **OPINION**

        This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Promptly after the filing of a petition for habeas corpus, the Court must undertake a preliminary review of the petition to determine whether "it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court." Rule 4, Rules Governing § 2254 Cases; *see* 28 U.S.C. § 2243. If so, the petition must be summarily dismissed. Rule 4; *see Allen v. Perini*, 424 F.2d 134, 141 (6th Cir. 1970) (district court has the duty to "screen out" petitions that lack merit on their face). A dismissal under Rule 4 includes those petitions which raise legally frivolous claims, as well as those containing factual allegations that are palpably incredible or false. *Carson v. Burke*, 178 F.3d 434, 436-37 (6th Cir. 1999). After undertaking the review required by Rule 4, the Court concludes that the petition must be dismissed because it fails to raise a meritorious federal claim.

**Discussion**

**I.       Factual allegations**

Petitioner Francis Michael Nutting is incarcerated with the Michigan Department of Corrections at the Chippewa Correctional Facility (URF) in Kincheloe, Chippewa County, Michigan. On July 7, 2015, Petitioner pleaded guilty in the Emmet County Circuit Court to three counts of third-degree criminal sexual conduct (CSC-III), in violation of Mich. Comp. Laws § 750.520d. On August 18, 2015, the court sentenced Petitioner as a second habitual offender to concurrent prison terms of 10 years to 22 years, 6 months on two of the CSC-III counts and 14 years, 11 months to 22 years, 6 months on the third count.

Petitioner directly appealed his sentences.[1] In his appeal brief, he described the proceedings before his plea as follows:

> Defendant-Appellant, Francis Nutting was charged with nineteen counts [of] Criminal Sexual Conduct First, MCL. 750.520B2B, and eleven counts of Criminal Sexual Conduct Second, MCL. 750.520C2B as a Habitual Offender Fourth for alleged offenses that occurred between 2007 and 2014.
>
> On August 11th, 2014 Mr. Nutting was arrested on a bench warrant for failing to appear on a charge of DWLS and interviewed by police about the instant allegations. Mr. Nutting admitted he lived with the Jamrozs for five years and babysat their children. Mr. Nutting denied [t]he allegations of sexual abuse, and stated he would take a polygraph. (PSR p. 5).
>
> Subsequently, before any charges were filed Mr. Nutting went to Kentucky. He was arrested on January 30, 2015 in Kentucky. He refused to sign the extradition and was extradited to Michigan.
>
> On May 21st, 2015 Mr. Nutting appeared for a polygraph examination and in a post interview told the examiner he had sex with [one of the victims] on one occasion. He denied all the other allegations. (PSR)

---

[1] Before seeking leave to appeal, Petitioner filed a motion to correct an invalid sentence (ECF No. 1-1, PageID.16-22), based on the trial court's failure to give Petitioner appropriate credit for the days he was jailed prior to his conviction. The parties stipulated to the proper credit and Petitioner's sentence was adjusted accordingly. Then, Petitioner filed his delayed application for leave to appeal his sentences.

(Pet'r's Appeal Br., ECF No. 1-2, PageID.30.)  Petitioner appeared in the trial court on July 7, 2015, and agreed to plead guilty to three counts of CSC-III as a second habitual offender.  (*Id*.)  As part of his plea, Petitioner "admitted to molesting three young girls under [the age of] thirteen."  (*Id*.)  The trial court described Petitioner's admissions at the plea hearing a little differently:

> In his written plea agreement and in sworn testimony at this plea hearing, Defendant admitted to sexually molesting the three victims when they were under 13 years old.  He admitted having intercourse with two of them, and performing cunnilingus on the other.  Thus, while his plea was to CSC third degree, Defendant admitted facts showing he was guilty of first degree CSC.

(Emmet Cnty. Cir. Ct. Op. and Order, ECF No. 1-4, PageID.72.)  Petitioner does not dispute the accuracy of the trial court's description.

Petitioner described the sentencing process as follows:

> Prior to sentencing a Presentence Report was prepared in which Mr. Nutting admitted having sex with [one victim] one time, and [another victim] one time but stated that is all he did.  (PSR p. 6)
>
> On August 18th, 2015 Mr. Nutting appeared for sentencing.  The sentencing guidelines were scored CV with a range of 51 to 106 months including a 10 point scoring under Offense Variable Nineteen for Interference with the administration of justice for leaving the State of Michigan before charges were brought.
>
> At sentencing defense counsel challenged the scoring under Offense Variable Nineteen arguing Mr. Nutting left the State of Michigan to find work in Kentucky.  (S p. 5)
>
> The prosecution argued the[re] was a report of a woman [saying] she helped Mr. Nutting to go to Kentucky and that he stated it was to get away from the police.  (Sp. 5).
>
> Mr. Nutting denied he left Michigan to get away from police.  (S p. 5)
>
> The trial court denied the challenge to OV 19 finding Mr. Nutting was aware he was under investigation for serious charges when he left Michigan, and he subsequently admitted molesting the girls, and there was [a] report [that] Ms. McGovern told police she drove Mr. Nutting to the state border when Mr. Nutting learned the police were looking for him.  (S 7).
>
> The prosecution argued for a guideline departure and asked the court to impose the maximum possible sentence under the statute of 178 months.  (S p. 10-11)

3

> The trial court found Mr. Nutting admitted intercourse with two of the girls, and oral sex with the other. The plea agreement included nineteen counts of criminal sexual conduct first, and Mr. Nutting's statements were not credible. (S p. 13)
>
> The court found reasons for an upward departure from the guidelines noting defendant received a substantial benefit from the plea agreement because he admitted to having intercourse with two of the young girls, and oral sex with the other and their allegations are he did this repeatedly over an extended period of time on numerous occasions. (S p. 13)
>
> The court found Mr. Nutting was forced to come to justice for only three of the events, but his own admissions indicate he is guilty of more serious conduct that that to which he pled. (S p.13). In addition, Mr. Nutting tries to minimize his culpability in a ridiculous fashion which was another reason for departure. (Sp. 13)

(Pet'r's Appeal Br., ECF No. 1-2, PageID.30-31.) Petitioner's description of the sentence proceedings in his initial appeal brief are of significance because they are very different than the description of the proceedings that supports the issues he raises in his petition.

In his first appeal, Petitioner argued that the trial court's upward departure with regard to his minimum sentence was unreasonable. By order entered January 7, 2016, the Michigan Court of Appeals remanded to the trial court for further proceedings consistent with the process set forth in *People v. Lockridge*, 870 N.W.2d 502 (2015), and *United States v. Crosby*, 397 F.3d 103 (2d Cir. 2005). *See People v. Nutting*, No. 330413 (Mich. Ct. App. Jan. 7, 2016), available at http://publicdocs.courts.mi.gov/coa/public/orders/2016/330413(9)_order.pdf. On remand, the trial court concluded it would have sentenced Petitioner to the same sentence under discretionary guidelines and that the scoring of Offense Variable 19 was correct. Petitioner sought leave to appeal that decision, raising the same issues he had raised in his initial appeal. (Pet., ECF No. 1, PageID.2.)

By order entered October 25, 2016, the Michigan Court of Appeals denied leave to appeal "for lack of merit in the grounds presented." *People v. Nutting*, No. 334803 (Mich. Ct. App. Oct. 25, 2016) available at http://publicdocs.courts.mi.gov/coa/public/orders/2016/

4

334803(10)_order.pdf. Petitioner sought leave to appeal that decision in the Michigan Supreme Court. That court denied leave by order entered October 31, 2017. *People v. Nutting*, 902 N.W.2d 613 (Mich. 2017).

Petitioner then returned to the trial court. He filed a motion for relief from judgment raising the following issue:

> I. The trial judge violated Defendant's due process rights by punishing him for exercising his right to challenge extradition by way of impermissibly scoring OV 19 which injected inaccurate information into the proceeding increasing the guidelines making the sentence harsher.

Pet'r's Mot. for Relief from J., ECF No. 1-4, PageID.39.) The trial court issued an opinion and order denying relief because Petitioner had challenged the scoring of offense variable 19 on direct appeal and lost. (Emmet Cnty. Cir. Ct. Op. and Order, ECF No. 1-4, PageID.72-74.) The trial court specifically stated, however, that the court rejected Petitioner challenge, not because he fought extradition, but because "he attempted to interfere with the administration of justice by fleeing the state when he was fully aware that he was under investigation for having sex with underage girls." (*Id.*, PageID.72.)

Petitioner sought leave to appeal the trial court's decision in the Michigan Court of Appeals and then the Michigan Supreme Court. Those courts denied leave by orders entered June 14, 2019, and February 4, 2020, respectively.

On September 25, 2020, Petitioner filed his habeas corpus petition raising two grounds for relief, as follows:

> I. The trial court abused its discretion in imposing the maximum sentence which was excessive and unreasonable, and resentencing is required.
>
> II. The trial judge violated the Defendant's due process rights by punishing him for exercising his right to challenge extradition by way of impermissibly scoring OV 19 which injected inaccurate information into the proceeding increasing the guidelines making the sentence harsher.

5

(Pet., ECF No. 1, PageID.5, 7.)

**II.    AEDPA standard**

This action is governed by the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, 110 Stat. 1214 (AEDPA). The AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693-94 (2002). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d). This standard is "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. 312, 316 (2015) (internal quotation omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). This Court may consider only the holdings, and not the dicta, of the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001). In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Lopez v. Smith*, 574 U.S. 1, 4 (2014); *Marshall v. Rodgers*, 569 U.S. 58, 64 (2013); *Parker v. Matthews*, 567 U.S. 37, 48-49 (2012); *Williams*, 529 U.S. at 381-82; *Miller v. Straub*, 299 F.3d 570, 578-79 (6th Cir. 2002). Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court. *Greene v. Fisher*, 565 U.S. 34, 37-38 (2011). Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court

adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405-06). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 575 U.S. at 316 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). In other words, "[w]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. 415, 424 (2014) (internal quotations omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (en banc); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey*, 271 F.3d at 656. This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

**III.   Discussion**

    **A.   Excessive and unreasonable sentence**

"[A] federal court may issue the writ to a state prisoner 'only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.'" *Wilson v. Corcoran*, 562 U.S. 1, 5 (2010) (quoting 28 U.S.C. § 2254(a)).  A habeas petition must "state facts that point to a 'real possibility of constitutional error.'" *Blackledge v. Allison*, 431 U.S. 63, 75 n.7 (1977) (quoting Advisory Committee Notes on Rule 4, Rules Governing Habeas Corpus Cases). The federal courts have no power to intervene on the basis of a perceived error of state law. *Wilson*, 562 U.S. at 5; *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Pulley v. Harris*, 465 U.S. 37, 41 (1984).  Claims concerning the improper application of sentencing guidelines are state-law claims and typically are not cognizable in habeas corpus proceedings. *See Hutto v. Davis*, 454 U.S. 370, 373-74 (1982) (federal courts normally do not review a sentence for a term of years that falls within the limits prescribed by the state legislature); *Austin v. Jackson*, 213 F.3d 298, 301-02 (6th Cir. 2000) (alleged violation of state law with respect to sentencing is not subject to federal habeas relief).  Therefore, to the extent Petitioner claims that the trial court scored Offense Variable 19 incorrectly under state law, his claim is not cognizable on habeas review.

Moreover, to the extent Petitioner intends to suggest that his sentence was disproportionate under *People v. Milbourn*, 461 N.W.2d. 1 (Mich. 1990), or unreasonable under *People v. Steanhouse*, 902 N.W.2d 327 (Mich. 2017), he fails to raise a cognizable habeas claim. In *Milbourn*, the Michigan Supreme Court held that a sentencing court must exercise its discretion within the bounds of Michigan's legislatively prescribed sentence range and pursuant to the intent of Michigan's legislative scheme of dispensing punishment according to the nature of the offense and the background of the offender. *Milbourn*, 461 N.W.2d at 9-10; *People v. Babcock*, 666

8

N.W.2d 231, 236 (Mich. 2003). Nearly three decades later, in *Steanhouse*, Michigan Supreme Court held that a sentencing court's departure from the sentencing guidelines is unreasonable if the court abused its discretion. *Steanhouse*, 902 N.W.2d at 335. The proper test for determining whether the sentencing court abused its discretion, it held, is found in *Milbourn*'s proportionality analysis. *Id.* In other words, a sentence departing from the guidelines is unreasonable if it is disproportionate. Clarifying its holding, the *Steanhouse* court expressly rejected adopting factors used by the federal courts. *Id.* It is plain that *Milbourn*, and thus *Steanhouse*, were decided under state, not federal, principles. *See Lunsford v. Hofbauer*, No. 94-2128, 1995 WL 236677, at * 2 (6th Cir. Apr. 21, 1995); *Atkins v. Overton*, 843 F. Supp. 258, 260 (E.D. Mich. 1994). As previously discussed, a federal court may grant habeas relief solely on the basis of federal law and has no power to intervene on the basis of a perceived error of state law. *See Wilson*, 562 U.S. at 5; *Bradshaw*, 546 U.S. at 76; *Pulley*, 465 U.S. at 41. Thus, any claim based on *Milbourn* and *Steanhouse* is not cognizable in a habeas corpus action.

Moreover, any claim that Petitioner's sentence was disproportionate under the Eighth Amendment is without merit. The United States Constitution does not require strict proportionality between a crime and its punishment. *Harmelin v. Michigan*, 501 U.S. 957, 965 (1991); *United States v. Marks*, 209 F.3d 577, 583 (6th Cir. 2000). "Consequently, only an extreme disparity between crime and sentence offends the Eighth Amendment." *Marks*, 209 F.3d at 583; *see also Lockyer v. Andrade*, 538 U.S. 63, 77 (2003) (gross disproportionality principle applies only in the extraordinary case); *Ewing v. California*, 538 U.S. 11, 36 (2003) (principle applies only in "'the rare case in which a threshold comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality'") (quoting *Rummel v. Estelle*, 445 U.S. 263, 285 (1980)). A sentence that falls within the maximum penalty authorized by statute

"generally does not constitute 'cruel and unusual punishment.'" *Austin v. Jackson*, 213 F.3d 298, 302 (6th Cir. 2000) (quoting *United States v. Organek*, 65 F.3d 60, 62 (6th Cir. 1995)). Further, "[f]ederal courts will not engage in a proportionality analysis except in cases where the penalty imposed is death or life in prison without possibility of parole." *United States v. Thomas*, 49 F.3d 253, 261 (6th Cir. 1995). Petitioner was not sentenced to death or life in prison without the possibility of parole, and his sentence falls within the maximum penalty under state law. Petitioner's sentence therefore does not present the extraordinary case that runs afoul of the Eighth Amendment's ban on cruel and unusual punishment.

Although the statement of Petitioner's ground for relief focuses on the duration of his sentence as the constitutional infirmity, his statement of supporting facts suggests a different problem. In describing the facts that support his claim, Petitioner presents reasons why the trial court was wrong when it concluded that Petitioner fled the state because he was under investigation for having sex with underage girls. (Pet., ECF No. 1, PageID.5-6.)

A sentence may violate due process if it is based upon material "misinformation of constitutional magnitude." *Roberts v. United States,* 445 U.S. 552, 556 (1980; *see also United States v. Tucker,* 404 U.S. 443, 447 (1972); *Townsend v. Burke,* 334 U.S. 736, 741 (1948). To prevail on such a claim, the petitioner must show (1) that the information before the sentencing court was materially false, and (2) that the court relied on the false information in imposing the sentence. *Tucker*, 404 U.S. at 447; *United States v. Stevens,* 851 F.2d 140, 143 (6th Cir. 1988); *United States v. Polselli*, 747 F.2d 356, 358 (6th Cir. 1984). A sentencing court demonstrates actual reliance on misinformation when the court gives "explicit attention" to it, "found[s]" its sentence "at least in part" on it, or gives "specific consideration" to the information before imposing sentence. *Tucker*, 404 U.S. at 444, 447.

10

But Petitioner does not identify any false information on which the trial court relied when it concluded that Petitioner fled the state and thereby interfered with the administration of justice. Instead, Petitioner disagrees with the inferences the judge drew regarding why Petitioner left the state.

The fact that the judge drew inferences from conflicting evidence as to why Petitioner left the state, even if Petitioner does not agree with those inferences, does not suffice to show that the court relied upon false information. *See Carrington v. Sloan*, No. 17-3709, 2018 WL 3244026, at *2 (6th Cir. Jan. 8, 2018) ("[Petitioner's disagreement with the trial court's view of the evidence does not establish that the trial court based its sentencing decision on materially false information.") (citing *Townsend*, 334 U.S. at 741); *Smoot v. Woods*, No. 16-2443, 2017 WL 4899812, at *7 (6th Cir. Jul. 3, 2017) ("[Petitioner's] disagreement with the state courts' view of the evidence does not establish that the trial court based its sentencing decision on materially false information."). As a result, with regard to the offense variable scoring, Petitioner has failed to demonstrate that the state courts' rejection of his claim is contrary to, or an unreasonable application of, clearly established federal law. Moreover, with regard to the underlying finding of fact, Petitioner has failed to show that the finding is unreasonable on the record. Indeed, Petitioner's initial appeal brief describes evidence that supports the trial court's conclusion. (Pet'r's Appeal Br., ECF No. 1-2, PageID.30-31.) Accordingly, Petitioner is not entitled to relief on his first habeas challenge.

### B. Petitioner's opposition to extradition as the basis for scoring OV 19

Petitioner's second ground for habeas relief depends on the following statement by the trial judge:

> Defendant fled Michigan three weeks after his initial interview for very serious crimes. He left after he agreed to a polygraph which he failed to attend. When Defendant was found in Kentucky **he fought extradition** and Governor's warrant

11

> had to be issued to bring him back to Michigan. Clearly, Defendant's efforts to evade further investigation and arrest for his crimes interfered with the administration of justice.

(Pet'r's Br. in Support of Mot. for Relief from J., ECF No. 1-3, PageID.48) (emphasis supplied by Petitioner). Petitioner claims that the trial court may not consider Petitioner's opposition to extradition when sentencing Petitioner because it is Petitioner's due process right to fight extradition.

Although Petitioner accurately points out that the court mentioned Petitioner's opposition to extradition in his explanation of his scoring decision, it is not at all clear from the quoted statement that the court relied on that opposition to score Offense Variable 19. Rather, the court relied on Petitioner's efforts to evade investigation and arrest. Evading investigation and arrest describes Petitioner's behavior in fleeing the state to avoid a polygraph, not opposing extradition. There is nothing about opposing extradition that evades investigation or arrest. It may have delayed the prosecution, but nothing more. The court made no mention of delay as a reason to score 10 points for Offense Variable 19. Moreover, when denying Petitioner's motion for relief from judgment, the court made clear that Petitioner earned the 10 points by fleeing the state when he was aware that he was under investigation for having sex with teenage girls. (Emmet Cnty. Cir. Ct. Op. and Order, ECF No. 1-4, PageID.72.) Indeed, that is exactly how Petitioner described the trial court's reasoning in his initial appeal brief. (Pet'r's Appeal Br., ECF No. 1-2, PageID.31) ("The sentencing guidelines were scored . . . including a 10 point scoring under Offense Variable Nineteen for interference with the administration of justice for leaving the State of Michigan before charges were brought.").

The trial court rejected Petitioner's challenge—his claim that the scoring was unconstitutional because it was based on Petitioner's exercise of a constitutional right—because the court did not score Offense Variable 19 based on Petitioner's opposition to extradition. The

12

court scored the variable instead based on Petitioner fleeing the state. Petitioner has failed to demonstrate that the trial court's factual determination is unreasonable on this record, nor has Petitioner shown that the trial court's rejection of the claim is contrary to, or an unreasonable application of, clearly established federal law. Accordingly, Petitioner has failed to demonstrate that he is entitled to habeas relief on this claim.

## IV.  Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001) (per curiam). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, this Court has examined each of Petitioner's claims under the *Slack* standard. Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

The Court finds that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims was debatable or wrong. Therefore, the Court will deny Petitioner

a certificate of appealability. Moreover, although Petitioner has failed to demonstrate that he is in custody in violation of the Constitution and has failed to make a substantial showing of the denial of a constitutional right, the Court does not conclude that any issue Petitioner might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962).

## **Conclusion**

The Court will enter a judgment dismissing the petition and an order denying a certificate of appealability.


Dated:  October 21, 2020            /s/ Janet T. Neff
                                    Janet T. Neff
                                    United States District Judge